**Martin W. RICE and Ruth Rice, Plaintiffs-Appellees,**

v.

**TRUNKLINE GAS COMPANY, a corporation, Defendant-Appellant.**

**No. 14092.**

United States Court of Appeals Seventh Circuit.

Sept. 25, 1963.

Rehearing Denied Nov. 5, 1963.

James F. Lemna, Tuscola, Ill., Robert Z. Hickman, Danville, Ill., for appellant, Lemna & Lee, Tuscola, Ill., Gunn, Hickman & Kesler, Danville, Ill., of counsel.

Carroll W. Dukes, Ralph J. Swanson, Danville, Ill., for appellees, Sebat, Swanson, Banks & Jones, Danville, Ill., of counsel.

Before HASTINGS, Chief Judge, and DUFFY and CASTLE, Circuit Judges.

DUFFY, Circuit Judge.

This suit was brought by plaintiffs, owners of farm land, to recover for damages to their land, tile drainage system and growing crops, alleged to have resulted from the construction of a 26″ gas pipeline across their land by the defendant. Plaintiffs also sought recovery for the injury to and death of turkeys on their farm alleged to have resulted from the turkeys being frightened by defendant's aerial patrol of its pipeline.

Defendant relies upon an Advanced Construction-Damage Receipt given to it by plaintiffs prior to the time when the pipeline was constructed. This receipt recited that the sum of $1267.20 was given as payment in full for all damages resulting from the construction of the pipeline. Defendant urges this payment is a bar to recovery for the alleged injury to the farm tile and crops.

The District Court found the damages to plaintiffs' crops exceeded the $1267.20 which had been paid by defendant and concluded the payment was not intended to cover all damages resulting from the installation of the pipeline. The Court found against the plaintiffs on the claim for damages to their turkeys. After giving defendant credit for the $1267.20 paid before the construction commenced,

the Court entered judgment for $4366.-70 in favor of the plaintiffs.

Some months prior to the execution of the receipt here in controversy, plaintiffs and various representatives of defendant had met in attempts to purchase a right-of-way grant which would permit the construction of the pipeline across the Rice farm. No agreement was reached and defendant filed a suit in the state court to condemn the needed right-of-way.

In the fall of 1959, defendant Trunkline Gas Company again negotiated with plaintiffs to acquire an easement across plaintiffs' farm for the purpose of constructing a 26″ gas pipeline thereon. The easement was to be sixty-six feet in width and one hundred fifteen and two tenths rods in length. Martin Rice, one of the plaintiffs, met with R. E. Wilson, District Superintendent of defendant.

At first no agreement was reached. Then Wilson suggested to Rice that he accept $5 per rod, the amount defendant was paying others for a right-of-way, and wait until after the construction was completed to fix the amount of damages. Wilson suggested that at such time, damages could be visually appraised and calculated. Rice stated he would not agree to any such arrangement and that his price was high because he wanted his damages in advance of any construction. Wilson testified he then told Rice, "Well then, you will have to consider this, that this payment for damages is going to all the damages, real or alleged, incurred by you by reason of the pipe line both on and off the right-of-way." Rice, in his testimony, did not materially challenge this statement. However, Rice did testify that he told Wilson he wanted $16 per rod and they agreed on that figure

and also that they discussed the clause regarding turkeys.

In obtaining the right-of-way agreements, defendant used both a "Receipt for Damages" and "Advanced Construction-Damage Receipt." The latter was used when property owners insisted upon being paid damages before construction work started, while "Receipt for Damages" was used where landowners wished to wait until after construction was completed in order to ascertain the damages.

On October 26, 1959, three documents were signed by plaintiffs. One was designated "Receipt for Right-of-Way." For this, plaintiffs were paid $576. The second was designated "Right-of-Way Agreement," and the third was designated "Advanced Construction-Damage Receipt." This is the document here at issue and is set forth in the margin.[1]

This suit was filed in July 1961. Later, an amended complaint and an amendment to the amended complaint were filed. Plaintiffs claimed that after the construction of the pipeline, the drainage on their farm was disrupted, ponds appeared on the land, and 18.9 acres were affected by this water. Plaintiffs claim that for 1960, 1961 and 1962, the crops of corn on six acres were completely destroyed, and that the balance of the 18.9 acres produced from thirty to one hundred bushels per acre.

About seven weeks after the trial, the Court, in a memorandum, indicated its views on the proper measure of damages. Thereafter the parties stipulated that if Martin Rice were called as a witness, he would testify it cost him $17 per acre for preparing, planting, cultivating and harvesting the 1960, 1961 and 1962 crops.

Eleven weeks after the trial, plaintiffs filed a second amendment to their amend-

---

[1].        "Advanced Construction-Damage Receipt."

"Rossville, Ill.
Oct. 26, 1959."

"Received of Trunkline Gas Company the sum of One Thousand Two Hundred Sixty-seven and 20/100 Dollars ($1,267.-20), as payment in full for damages (real or alleged) that has been or may be sus- tained by me on account of the construction of the 26″ pipe line on or across the following described premises: (Legal description of the Rice land.) or the exercise of any other rights granted under terms and conditions of a certain grant of Right of Way from Martin W. Rice & Ruth Rice, husband and wife, bearing date of October 26, 1959." .

ed complaint. Two weeks later, for the first time in any pleadings, plaintiffs claimed the Advanced Construction-Damage Receipt was entered into under a mutual mistake of fact. The decision of the District Court was that this receipt must be set aside because of a mutual mistake. The Court also held that plaintiffs had failed to prove the identity of the airplane which flew over their farm, and that they were not entitled to recover for damages to their turkeys.

An examination of the findings of fact indicates the District Court found the parties were mistaken about the "amount of the damage" which might be caused by the construction of the pipeline. There was no finding that the parties were mistaken in the fact that no damage would result but merely that the parties did not anticipate the amount of damages which plaintiffs might suffer.

When the receipt was given and prior to any construction work, Wilson had told Rice, "This payment for damages is going to all damages * * * incurred by you by reason of the pipeline." The receipt itself sets forth that it was " * * * payment in full for damages (real or alleged) that has been or may be sustained by me on account of the construction of the 26″ pipeline. * *″ It was plaintiff Rice who insisted he would not wait for payment until all damages could be ascertained. No fraud or over-reaching by defendant has been suggested in this case.

■ It is the rule in Illinois that a release cannot be avoided merely because the injuries or damages prove to be more serious than the releasor believed them to be. Hudson v. Thies, 35 Ill.App.2d 189, 182 N.E.2d 760 (1962); Thomas v. Hollowell, 20 Ill.App.2d 288, 155 N.E.2d 827 (1959).

■ It is also the law in Illinois that where contracting parties have reduced their agreement to writing, it is presumed to express their mentioned intention, and that presumption does not yield to a claim of a different intention, unless the evidence of a mutual mistake is of a strong and convincing nature. Biskupski v. Jaroszewski, 398 Ill. 287, 76 N.E.2d 55 (1947).

Plaintiffs argue that neither party contemplated the drainage problem. The plaintiffs did know that a 26″ pipeline was to be laid 30″ deep across their land. The angle at which the line was to cross the farm was also known. Plaintiffs likewise knew that drain tile on their farm would be intersected by the pipeline.

In central Illinois, drain tile is commonly used for the drainage of farms. In every pipeline condemnation sought in this area, it is a fair inference that disturbance of the tile drainage system is an important item of damage as farm tile drainage systems could rarely be avoided entirely. It is difficult to conclude that any of the parties to the agreement here under consideration thought that the drainage system on plaintiffs' farm would not be disturbed.

If a mistake of fact were made, it must be a mistake of a present or a past fact. Surely, plaintiffs cannot seriously argue that they knew nothing of the drainage problem immediately before the signing of the instruments but that immediately thereafter they were possessed of such knowledge as to establish the drainage problem as a present fact. Furthermore, the mistake must be mutual. There is nothing in this record to indicate that defendant was not fully aware that some damage would occur to the drainage system on plaintiffs' farm.

Plaintiffs argue the $576 paid under the Right-of-Way Receipt covered all damages within the easement strip. This is incorrect. The Right-of-Way Receipt states " * * * not including damages to crops, fences or other property of the grantor." It is clear that the payment of $576 was consideration for the easement rights only.

■ Defendant concedes the Advanced Construction-Damage Receipt signed by plaintiffs does not release any damage which might arise from future operations by defendant in the maintain-

ing or repairing of the pipeline. However, we agree with defendant that the receipt does release all damages resulting from the construction of the pipeline.

The judgment of the District Court in favor of plaintiffs is reversed and remanded with instructions to enter judgment dismissing the complaint.

Reversed.